UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

TED ANTOINE,

                Petitioner,

         v.

SUPERINTENDENT ROBERT ERCOLE[1],

                Respondent.

----------------------------------------------------------------x

**MEMORANDUM & ORDER**
11-CV-00088 (PKC)

PAMELA K. CHEN, United States District Judge:

       Pending before the Court is Petitioner Ted Antoine's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 2003, Antoine pled guilty to one count of second-degree murder.  Although Antoine's *pro se* petition is somewhat unclear with respect to the grounds upon which he seeks relief, the Court construes Antoine's petition to set forth three grounds for relief:  (1) Antoine's guilty plea was not knowing and voluntary because it was induced by misleading and coercive statements made by the trial court; (2) Antoine's counsel was ineffective for advising him to plead guilty; and (3) Antoine's motion pursuant to New York Criminal Procedure Law § 440.10 to vacate his conviction (the "440 Motion") was improperly denied without a hearing.  (Dkt. 1 at ECF 5–6 & accompanying exhibits.)[2]  For the reasons stated below, Antoine's application is denied in its entirety.

---

[1] This case initially was captioned *Antoine v. Martuscello*.  The parties later began captioning their submissions *Antoine v. Ercole,* presumably to reflect the change in the superintendent of the facility where Antoine is incarcerated.  Accordingly, the matter henceforth will be captioned *Antoine v. Ercole*.

[2] The Court construes Antoine's *pro se* petition in the manner most favorable to him.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (requiring courts to hold *pro se* pleadings to less stringent standards); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (the

*BACKGROUND*

A.    *Charged Conduct*

On the evening of October 3, 2002, 17-year-old Antoine punctured the tires of his

mother's former boyfriend's car, which was parked outside the ex-boyfriend's house.  Antoine

wanted to prevent the ex-boyfriend, Ronald Guerrier, from leaving his house in the morning.

(Dkt. 1 at ECF 5.)[3]  When Guerrier emerged from his house the next morning, Antoine

approached Guerrier with a gun and shot him once in the back in front of two eyewitnesses,

including Guerrier's young son.  (Dkt. 3-2 at ECF 6, 67.)  Guerrier died as a result of the gunshot

wound.  (Dkt. 3 at 2.)  Following his arrest, Antoine confessed to killing Guerrier in both a

written statement and a videotaped confession.  (Dkt. 3 at ECF 10.)  Antoine explained in his

written statement that he did it "because of all the anger I had for [Guerrier] over the years from

all the abuse[.]"[4]  (Dkt. 3-3 at ECF 25.)  In his statement, Antoine set forth a history of abuse at

the hands of Guerrier after Antoine's mother died and Antoine and his brother were left in

Guerrier's care.  (Dkt. 3-2 at ECF 28–30.)  Antoine also explained in his written statement that

the abuse had ceased when he turned 13, four years before the shooting.  (Dkt. 3-2 at ECF 29.)

Antoine was charged with two counts of Murder in the Second Degree (N.Y. Penal Law

§ 125.25[1], [2]) and other related charges.  (Dkt. 3 at 2.)

B.    *Pretrial Hearings*

On October 16, 2003, the trial court conducted a lengthy suppression hearing regarding

the admissibility of Antoine's post-arrest statements.  The next day, on October 17, the trial court

---

court is obligated to construe *pro* se petition "to raise the strongest arguments" it suggests)
(emphasis omitted).
[3] Citations to "ECF" pages refer to the page numbering of the Electronic Court Filing ("ECF")
system.  Citations not so labeled refer to the internal page numbering of the cited source.
[4] Antoine's entire statement is appended to the state's brief in response to Antoine's direct appeal
of his conviction.  (Dkt. 3-2 at ECF 28–31.)

denied Antoine's suppression motion, finding that "the statement was clearly voluntarily given[.]" The court ruled that the confessions would be admissible at trial. (Dkt. 3-4 at ECF 52.) After ruling on the suppression motion, the trial court began discussing with Antoine the possibility of a guilty plea:[5]

> THE COURT: The jury is going to hear your videotape. They are also going to have an opportunity to read your handwritten statement and they are going to hear testimony from two witnesses who say you're the person who committed the crime. I don't know if the jury is going to believe it or not believe it. If they believe that and they accept that they have no choice but to find you guilty. I don't know what your wishes are. You could certainly have a trial. I want to ask the District Attorney to approach and the defense attorney.
>
> (Discussion held at the bench, off the record.)
>
> THE COURT: Mr. Antoine, I'm prepared to offer you the least the law could give you for the crime of this nature, which is fifteen years to life. That is the only offer I could make you.
>
> The District Attorney, he tells me that he is not going to reduce the charges. If you want to take that plea I'll give it to you only if you admit you did it. *If you don't want to admit you did it, that is okay, the jury will hear the evidence and they can decide. I don't know what they are going to decide; I'm not the jury. You'll get a fair trial here.*
>
> On the other hand, it's a pretty strong case against you. I don't know what is going to come out at the trial. I could at the end sentence you to fifteen to life. I could hear things at the end which make[] me think the story is not true, you had another reason for being angry at your stepfather, not because he was physically abusing you or beating you up or your little brother, I don't know. If I find that to be the case I won't be as sympathetic to you as I would now. It's up to you.
>
> I want to give you the opportunity before we bring the jury in to make a decision. Your lawyer believes it's in your best interest to plead guilty. I understand why he does. I'm sure he will do the best he can. He has a hard problem, he has a statement and your voice on the videotape. He didn't put your voice there. He didn't tell you to go there and say all those things.

---

[5] Antoine was 18-years old at the time of the plea proceeding.

It's very hard to persuade a jury it's not true. It's difficult for me. I can't get into your head. I don't know what happened or why you did this or if you did it, but if you want to take a plea and if you want to admit that you shot him I will promise you a sentence of fifteen years to life.

I've got to be convinced you're doing it because you are guilty. You have to decide what to do. Your lawyer has a very hard job here because of your video.

Do you understand what I'm saying to you?

THE DEFENDANT: Yes.

THE COURT: *Do you want to talk to your lawyer for a few minutes?* What do you want me to do? Do you want me to send for the panel? Well, they are on their way up.

THE DEFENDANT: *I want to talk to my lawyer first.*

(Short pause in the proceedings.)

MR. MARTIN: Judge, I had a conversation with my client. He has expressed some concerns that he is hesitant to take the plea because he didn't do it.

THE COURT: *Okay, that is the end of that.*

MR. MARTIN: Is that correct?

THE DEFENDANT: Yes.

THE COURT: *That is the end of it.*

(Dkt. 3-4 at ECF 52–55) (emphases added).[6]  The judge reminded Antoine that his videotaped

confession would be admitted at trial and that it would be "difficult to prove to the jury, to

---

[6] During the hearing, Antoine conferred with counsel several other times.  (*See* Dkt. 3-4 at ECF 54, ECF 56, ECF 58.)  The plea proceeding transcript gives no indication as to the length of each of Antoine's off-the-record discussions with his attorney, nor can it convey the tone or pace of the judge's or parties' statements during the colloquy.

establish to the jury's satisfaction that that statement wasn't you or you were lying when you made the statement." (Dkt. 3-4 at ECF 55.)

The judge then turned to discussing how the trial would proceed. She asked defense counsel whether Antoine intended to exercise his right to be present during sidebar discussions between potential jurors and the judge during jury selection. (Dkt. 3-4 at ECF 55–56.) In the midst of this discussion, Antoine interrupted the judge to request a conference with counsel, which the court permitted. (Dkt. 3-4 at ECF 56.) Following the conference, Antoine's counsel asked to speak with the judge. (Dkt 3-4 at ECF 56.) Immediately after the court's conference with Antoine's counsel, the court again admonished Antoine:

> THE COURT: Mr. Antoine, I want you to understand something.
>
> > *I will not accept a plea from you unless you tell me that you did it. Now, for whatever reason you seem to be saying that you didn't do it and that is what trials are all about. I'm not going to accept the plea based on some other thing that you're willing to say you did it because you're protecting someone else, anything like that. I'm not willing to accept that plea.*
> >
> > The evidence here is that you did it. The evidence consists of the testimony by your stepbrother and by another witness who says she saw it and by your three statements. That is a lot of evidence.
> >
> > So I certainly am not going to accept a plea that says you didn't do it, but you're pleading guilty because you want to protect somebody else.
> >
> > *I would like you to just take a moment to decide. If you want to talk to your lawyer a few more minutes, okay.* Otherwise, I have a jury waiting out in the hall and we will get started. This is really your last chance.
> >
> > If you committed this crime and if you want to plead guilty, get the minimum sentence the law allows, I will give it to you. If you don't want to plead guilty we will stop all this discussion, we will bring the jury in, we will select a jury and see what happens at the trial and how I feel after the trial, if you're convicted, and see what your sentence will be. Depends on what I find out about the trial. Right now I'm basing my decision on what you said, your video. That is why I'm giving you the minimum.

> The District Attorney thinks maybe that is not all together true. I don't know. I am basing it on that because I haven't heard anything else.
>
> *If you want to take a plea and get a promise of fifteen years you could do that. If you want to take a chance do that too. Make up your mind. If you want to plead guilty you'll have to tell me what you did. It's up to you. Want to talk to your lawyer about it, whatever you want to do?*
>
> I need to move on. I have people standing out in the hallway. There are seventy people out there waiting to be questioned whether they could be jurors in this case. We need to keep going. If you want to take the plea this is the time.

THE DEFENDANT: *I want to speak to my lawyer.*

THE COURT: *Go ahead.*

(Short pause in the proceedings.)

THE DEFENDANT: *I would like to say that I did it.*

(Dkt. 3-4 at ECF 56–58) (emphases added).

The court confirmed that Antoine indeed wanted to admit that he committed the crime (Dkt. 3-4 at ECF 59), then advised Antoine of his rights. (Dkt. 3-4 at ECF 59–63.) The court established that Antoine was voluntarily waiving his right to a trial and that no one had threatened or influenced him to give up that right (Dkt. 3-4 at ECF 61), that he had been advised by his attorney, understood that the court would give him a fair trial should he choose to proceed to trial, and that the jury would have to find him guilty beyond a reasonable doubt at trial. (Dkt. 3-4 at ECF 60.)

Antoine then allocuted as follows:

THE COURT: If you want me to accept the plea and give you the promised sentence of fifteen years to life then you have to tell me about the crime you committed. What happened?

THE DEFENDANT: I came up to my stepfather and shot him.

6

THE COURT: You came up to him and what?

THE DEFENDANT: I shot him.

THE COURT: You killed him?

THE DEFENDANT: Yes.

THE COURT: Did you intend to kill him?

THE DEFENDANT: No.

THE COURT: What did you do? You pulled the trigger?

THE DEFENDANT: Yes.

THE COURT: *You understand pulling the trigger when somebody is at close range is what we call depraved indifference murder.* In other words, a reasonable person wouldn't do that under that kind of circumstances do you understand that?

THE DEFENDANT: Yes.

THE COURT: So even if you didn't intend to do it the way you came out, you acted under circumstances that would show that you didn't obey the common laws of decency or the common laws of cautious behavior[,] do you understand?

THE DEFENDANT: Yes.

THE COURT: Is that true?

THE DEFENDANT: Yes.

THE COURT: Where did this happen?

THE DEFENDANT: Avenue D.

THE COURT: And who was the person you killed?

THE DEFENDANT: Reynold Guerrier.

THE COURT: What was he to you?

THE DEFENDANT: My younger brother's father.

THE COURT: Was he your stepfather?

THE DEFENDANT: No.

THE COURT: He was not your stepfather?

THE DEFENDANT: No. He didn't get married to my mother.

THE COURT: I beg your pardon?

THE DEFENDANT: He didn't get married to my mother.

THE COURT: Mr. Hale, anything else you want to ask?

MR. HALE: No. That is fine, Judge.

THE COURT: We are going to adjourn this case and the Probation Department is going to interview you.

(Dkt. 3-4 at ECF 61–63) (emphasis added).

The judge concluded the hearing by stating that she would sentence Antoine to the promised sentence of 15 years to life unless the probation report reflected something the judge did not then know that would merit a lengthier sentence. (Dkt. 3-4 at ECF 63.)

C.    *Sentencing*

The court sentenced Antoine on November 7, 2003. (Dkt. 3-4 at ECF 66–68.) The court noted that it was imposing the minimum sentence in part to avoid the need for Guerrier's young son, who witnessed the killing, to testify at trial. (Dkt. 3-4 at ECF 67.) The court provided Antoine an opportunity to make a statement regarding his sentence, which he declined, and the court formally imposed an indeterminate sentence of 15 years to life for murder in the second degree. (Dkt. 3-4 at ECF 67.) The court then confirmed that Antoine was not waiving his appellate rights and advised Antoine that he had thirty days to appeal, and if he could not afford an attorney to prosecute that appeal, one would be appointed for him. (Dkt. 3-4 at 67–68.)

*D.     Appeal*

Antoine appealed the judgment of conviction to the Appellate Division, Second Department, on the basis that his guilty plea was not knowing and voluntary because the trial court had coerced Antoine into accepting the guilty plea, and had misled him regarding the strength of the state's evidence.  (Dkt. 3-2 at ECF 2, ECF 13.)  Antoine argued, *inter alia*, that the court misrepresented the nature of the case to exclude the issue of Antoine's mens rea at the time of the killing (Dkt. 3-2 at ECF 13), that the court "kept pushing" Antoine to plead guilty even after he "made clear" that he did not wish to plead guilty (Dkt. 3-2 at ECF 14), and that the court failed to advise Antoine of all of the constitutional rights he would be waiving by not seeking trial, (Dkt. 3-2 at ECF 20.)

The Appellate Division affirmed the judgment of conviction on February 10, 2009. *People v. Antoine*, 59 A.D.3d 560 (2d Dep't 2009).  The Appellate Division held that Antoine's claim that his plea was not knowing and voluntary was not preserved for appellate review because Antoine had not sought to withdraw or vacate his plea on that basis.  The Appellate Division declined to exercise its "interest of justice" jurisdiction to review the claim.  *Id.*  The court further held that Antoine's "claim that his plea and waiver were not intelligently, knowingly, and voluntarily made because the court failed to specifically enumerate all of the rights to which he was entitled is without merit."  *Id.* (citing cases).  The court also found that Antoine's challenge regarding his allocution was unpreserved, but in any event that the allocution was sufficient with respect to the depraved indifference murder charge.  *Id.*  The court found that any other claim challenging the sufficiency of the allocution, the waiver of rights, or that the circumstances surrounding his shooting of the victim did not constitute depraved indifference murder either were not preserved for review or were forfeited entirely by Antoine's plea of

9

guilty. *Id.*; *see People v. Thomas*, 53 N.Y.2d 338, 343 n.2 (1981) ("Forfeiture [of a claim] occurs by operation of law as a consequence of a guilty plea, with respect to the issues which as a matter of policy the law does not permit to survive such a plea.").

The New York Court of Appeals denied leave to appeal on May 11, 2009. *People v. Antoine*, 12 N.Y.3d 851 (2009). Antoine's conviction became final 90 days later on August 9, 2009, when time expired for Antoine to seek a writ of certiorari from the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) ("[A] petitioner's conviction becomes final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s].") (internal quotations omitted).

> E.        *Post-Conviction Collateral Attack*

Prior to the conclusion of his direct appeal and his conviction becoming final, on October 21, 2008, Antoine filed a motion pursuant to New York Criminal Procedure Law § 440.10 to vacate the judgment of conviction (the "440 Motion"). (*See* Dkt. 3-2 at ECF 55, 70.) Antoine sought vacatur on the basis that his trial counsel was ineffective for advising him to plead guilty to a "coercive" plea, for counsel's own conduct in "coercing" Antoine to plead guilty, and for counsel's failure to request a charge of manslaughter. (Dkt. 3-3 at ECF 45–46.)

By order and opinion dated May 22, 2009, the Supreme Court of New York denied Antoine's 440 Motion. (Dkt. 3-3 at ECF 24–42.) In a lengthy opinion, the court held that Antoine already had sought relief on all but one of the grounds on direct appeal, and therefore those claims were barred from collateral review. (Dkt. 3-3 at ECF 32) (citing N.Y.C.P.L. § 440.10(2)(a)). The court, however, addressed Antoine's ineffective assistance of counsel claim and denied it on the merits. (Dkt. 3-3 at ECF 32–42.) The court found that Antoine's counsel provided him meaningful representation and had legitimate strategic reasons for advising

Antoine "that he would be convicted of second degree murder after trial if the jury credited his statements and the eyewitness testimony." (Dkt. 3-3 at ECF 38.) The court concluded that, "[i]ndeed, in light of the overwhelming evidence against [Antoine] and the plea offer made by the court, the minimum sentence available under law, this Court finds that counsel provided the defendant with meaningful representation by advising him to accept the trial court's offer." (Dkt. 3-3 at ECF 38–39 (citing *People v. Lewis*, 116 A.D.2d 778 (3d Dep't) (1986)). The court also found that what Antoine characterized as his counsel's "coercion" to accept the court's plea offer "amounted to nothing more than the attorney's fulfillment of his obligation to render appropriate advice concerning the strength of the prosecution's case." (Dkt. 3-3 at ECF 39–40) (quoting *People v. Cross*, 262 A.D.2d 223 (1st Dep't 1999)).

The Appellate Division denied Antoine leave to appeal from the denial of his 440 Motion on January 5, 2010. (Dkt. 1 at ECF 3; Dkt. 3 at 11.)

F. *The Instant Petition*

Antoine timely filed the instant petition on January 4, 2011, which was one day before the expiration of AEDPA's one-year limitation period. *See* 28 U.S.C. § 2244; (Dkt. 1.) As the Court construes Antoine's petition, Antoine challenges his conviction on the grounds that: (1) his guilty plea was not knowing and voluntary because it was induced by misleading and coercive statements by the trial court; (2) Antoine's counsel was ineffective for advising him to plead guilty; and (3) the Supreme Court improperly denied his 440 Motion without conducting a hearing. (Dkt. 1 at ECF 5–6 & accompanying exhibits.)

G. *Motion to Stay to Exhaust State Remedies*

More than a year after submitting this petition, by letter dated June 26, 2012, Antoine sought a stay of this habeas proceeding to apply for a writ of *coram nobis* from the Appellate

Division, in order to exhaust his state law remedies on his ineffective assistance of appellate counsel claim, which Antoine had not previously asserted.  (Dkt. 4.)[7]  By order dated October 22, 2012, Judge Dora L. Irizarry denied Antoine's request.  (Dkt. 6.)  Judge Irizarry found that Antoine had not established the "good cause" required to excuse a petitioner's failure to first exhaust state law claims before seeking habeas relief.  (Dkt. 6 at 2.)  Judge Irizarry found that the lack of good cause was sufficient to prevent her from granting the stay.  (Dkt. 6 at 3.)

*DISCUSSION*

I.      *Standard of Review under 28 U.S.C. § 2254*

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when 'it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'"  *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)).  A decision is "contrary to" established federal law if it either "applies a rule that

---

[7] Antoine indicated in his stay request that the grounds for his appellate counsel ineffectiveness claim were that his appellate counsel did not raise the issue of ineffective assistance of trial counsel.  (Dkt. 4 at 1.)

contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (internal quotation marks and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

II.      Exhaustion

Antoine has properly exhausted the claims in his habeas petition relating to the

voluntariness of his guilty plea and the performance of his trial counsel.[8]

III.     Proffered Grounds for Habeas Relief

A.       Knowing and Voluntary Guilty Plea

The central focus of Antoine's petition is that the trial court "coerced" him into pleading

guilty, and therefore his guilty plea was not "knowing" and "voluntary" in violation of his right

to due process.  The Appellate Division held that Antoine's claim was not preserved because he

had not moved to withdraw his plea on that basis.  *People v. Antoine*, 59 A.D.3d 560 (2d Dep't

2009) (citing *People v. Clarke*, 93 N.Y.2d 904, 906 (1999); *People v. Perez*, 51 A.D.3d 1043 (2d

Dep't 2008); *People v. Scoca*, 38 A.D.3d 801 (2d Dep't 2007)).

1.      Adequate and Independent State Procedural Ground

It is well-settled that a petitioner's federal claim may be procedurally barred from federal

habeas review if the state court resolved the issue on an "adequate and independent" state

procedural ground.  *See Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991); *Valesquez v.

Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).  A procedural rule is considered adequate if it is "firmly

established and regularly followed by the state in question."  *Garcia v. Lewis*, 188 F.3d 71, 77

(2d Cir. 1999).  To be independent, the "state court must actually have relied on the procedural

---

[8] Antoine's petition does not include the claim that his appellate counsel was ineffective, which is the issue that prompted Antoine to seek a stay of these proceedings so that he could exhaust the claim in state court.  Had this action been stayed and Antoine had exhausted this claim in state court, under Rule 15 he could have returned to this Court to request leave to amend the instant habeas petition to include a claim for ineffective assistance of appellate counsel. However, Judge Irizarry properly denied Antoine's stay request because Antoine failed to show good cause for not previously exhausting this claim.  Judge Irizarry's denial of the stay and Antoine's resulting inability to exhaust that claim in state court gives rise to a procedural bar with respect to any claim of ineffective assistance of appellate counsel.

bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261–62, 263 (1989) (internal quotations omitted). Here, the Appellate Division's determination that Antoine's claim about the alleged involuntariness of his guilty plea was procedurally barred meets those requirements, and constitutes an adequate and independent state procedural ground for resolution of the issue in state court.[9]

First, a state procedural ground is "adequate," if the court relied on a state rule that was "firmly established and regularly followed" in the state's courts at the time of the decision. *Coleman*, 501 U.S. at 729–33. Here, the Appellate Division relied on New York's rule that a defendant must first seek to withdraw or vacate a guilty plea to preserve appellate review, which Antoine did not do. *See Antoine*, 59 A.D.3d at 560. New York courts long have relied on the preservation requirement to deny challenges to the voluntariness of guilty pleas. *See, e.g.*, *People v. Clarke*, 93 N.Y.2d 904, 906 (1999); *People v. Lopez*, 71 N.Y.2d 662, 665 (1988). Thus, it is clear that at the time of the Appellate Division's affirmance of Antoine's conviction the preservation requirement was "firmly established and regularly followed" by New York courts. *See, e.g.*, *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) ("application of the state's preservation rule is adequate—*i.e.*, firmly established and regularly followed"); *see also Swanton v. Graham*, 07-CV-4113(JFB), 2009 WL 1406969, at *7 n.6 (E.D.N.Y. May 19, 2009) (citing *Lawreth v. Conway*, 493 F. Supp. 2d 662, 668–69 (W.D.N.Y. 2007) (finding claim barred because in "New York, the firmly established and regularly followed rule for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or

---

[9] Indeed, Antoine on direct appeal conceded that "[s]ince appellant did not move to withdraw his plea prior to sentencing, his claim that the plea was not entered voluntarily, knowingly and intelligently is not preserved for appellate review." (Dkt. 3-2 at ECF 21.)

to vacate the judgment of conviction") (internal citations omitted)).  Thus, the first prong of the test set forth in *Coleman* is satisfied.

Second, the Appellate Division's ruling that Antoine's claim was unpreserved for appellate review was "independent" because the Appellate Division expressly relied on the state preservation rule in denying Antoine's appeal.  *See Antoine*, 59 A.D.3d at 560.  ("The defendant's contention that his plea of guilty was not voluntary because it was coerced is unpreserved for appellate review since he did not move to withdraw his plea on that basis.") (citing New York cases).  Thus, the second prong of the *Coleman* test is satisfied.

Because the Appellate Division's denial of Antoine's challenge to the voluntariness of his guilty plea constitutes an "adequate and independent state" procedural ground, federal habeas review is foreclosed.[10]  Notwithstanding Antoine's failure to preserve his voluntariness claim, the Court can still review the merits of his claim if Antoine demonstrates both cause for the failure to preserve his claim and prejudice resulting therefrom, or if he demonstrates that the failure to consider the claim would result in a miscarriage of justice.  *See Coleman*, 501 U.S. at 750.

Antoine does not attempt to explain his failure to seek to withdraw or vacate his guilty plea and therefore has failed to demonstrate cause or prejudice.[11]  Antoine also does not set forth

_____

[10] Even assuming *arguendo* that the Appellate Division erroneously applied New York law with respect to the preservation rule, no habeas relief lies for mere errors of state law that do not otherwise constitute a violation of federal law.  *Swarthout v. Cooke*, --- U.S. ---, 131 S. Ct. 859, 861 (2011); *Wilson v. Corcoran*, --- U.S. ---, 131 S. Ct. 13, 16 (2010).  Rather, such errors must rise to the level of a violation of the federal constitutional or other federal law for habeas relief to lie.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (*per curiam*).

[11] Any claim that Antoine's failure to seek to withdraw or vacate his plea was the result of ineffective counsel cannot overcome a procedural bar unless he can show that he would have prevailed on the merits of his ineffectiveness claim, *i.e.*, that his counsel was ineffective for not advising him to withdraw his guilty plea.  *See McLeod v. Graham*, 10-CV-3778(BMC), 2010 WL 5125317, at *7 (E.D.N.Y. Dec. 9 2010) (citing *Aparcio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001)); *Larrea v. Bennett*, 368 F.3d 179, 182 (2d Cir. 2004)).  Antoine cannot meet this burden because, as discussed *infra*, it was not ineffective for Antoine's counsel to advise him to

any basis, such as actual innocence, to conclude that a miscarriage of justice would occur were the Court not to review his claim on the merits. *See St. Helen v. Senkowski*, 374 F.3d 181, 183–184 (2004) (citing *Bousley v. United States*, 523 U.S. 614 (1998)). Therefore, there is no good cause to excuse Antoine's failure to preserve his claim of an involuntary guilty plea, and the Court therefore is barred from reaching the merits of this claim.

### 2. *Merits of Antoine's Voluntariness Claim*

However, were the Court permitted to address the merits of Antoine's involuntariness claim, it would fail on the merits. The record in this case demonstrates that Antoine's guilty plea was knowingly, intelligently, and voluntarily given following the colloquy between the trial court and Antoine, and based upon his trial counsel's competent and reasonable advice. During the plea proceedings, it was proper for the trial judge to explore with Antoine the strength of the People's case, the potential sentence to which Antoine was exposed, and the favorableness of the plea bargain. *See People v. Gonzalez*, 5 A.D.3d 168, 168–69 (1st Dep't 2004). It was not coercive for the trial court to do so, particularly given that Antoine was represented by able counsel, with whom Antoine conferred multiple times during the plea hearing.[12]

Antoine points to the following exchange as evidence that the trial court coerced him to plead guilty after Antoine rejected the court's plea offer:

THE COURT: I've got to be convinced you're doing it because you are guilty. You have to decide what to do. Your lawyer has a very hard job here because of your video. Do you understand what I'm saying to

---

plead guilty. So too it was not ineffective for Antoine's counsel not to advise him to withdraw that plea.

[12] Even had the trial court improperly participated in Antoine's plea hearing, automatic vacatur of his conviction would not be required, and the Court would review the totality of the circumstances to ascertain whether there exists "a reasonable probability that, but for the [judge's improper participation], he would not have entered the plea." *United States v. Davila*, 133 S. Ct. 2139, 2142 (U.S. 2013). Such an inquiry is not necessary here, however, because the trial court did not conduct itself improperly.

you?

THE DEFENDANT: Yes.

THE COURT: Do you want to talk to your lawyer for a few minutes? What do you want me to do? Do you want me to send for the panel? Well, they are on their way up.

THE DEFENDANT: I want to talk to my lawyer first.

(Short pause in the proceedings.)

MR. MARTIN: Judge, I had a conversation with my client. He has expressed some concerns that he is hesitant to take the plea because he didn't do it.

THE COURT: *Okay, that is the end of that.*

MR. MARTIN: *Is that correct?*

THE DEFENDANT: *Yes.*

THE COURT: *That is the end of it.* The video we saw yesterday will be shown to this jury.

THE DEFENDANT: Yes.

THE COURT: That will say very clearly that you did do it and why you did do it. If you want to go to trial under those circumstances you can, but it's going to be difficult to prove to the jury, to establish to the jury's satisfaction that that statement wasn't you or you were lying when you made the statement. I don't know exactly what you think you're going to be saying to the jury that is going to persuade them. It's up to you. I'm not going to let you take a plea unless you'll admit to me you shot him and killed him.

MR. MARTIN: Do you understand?

THE DEFENDANT: Yes.

THE COURT: You don't want to do that? What is your client's decision on Antommarchi?[13]

MR. MARTIN: He indicated he waived his Antommarchi rights.

THE COURT: Do you understand what that means? Your lawyer will come up to the bench if a juror wants to tell us something and he will come back and tell you what the person said. So you'll hear about everything, but you won't be up here; do you understand that?

THE DEFENDANT: Yeah.

(Dkt. 3-4 at ECF 54–56) (emphases added).

However, this excerpt does not capture the entire exchange, which continued:

THE COURT: What?

THE DEFENDANT: Yeah.

THE COURT: That is okay with you?

THE DEFENDANT: Yeah.

THE COURT: I have to hear you.

THE DEFENDANT: Yes.

THE COURT: Is that all right with you?

THE DEFENDANT: Yes.

*Can I ask my lawyer something?*

THE COURT: *You can always talk to your lawyer.*

(Short pause in the proceedings.)

MR. MARTIN: Can we have two minutes before the panel comes in?

THE COURT: Yes. They are outside.

---

[13] *People v. Antommarchi*, 80 N.Y.2d 247, 250 (1992) established that a defendant has a right to be present during any material stage of the trial, including any side-bar discussions with prospective jurors relating to the jurors' ability to "weigh the evidence objectively."

(Short pause in the proceedings.)

(Dkt. 3-4 at ECF 56) (emphases added).

 After conferring with Antoine, defense counsel approached the bench to confer with the court, after which the court explained to Antoine, in substance, that she could only accept his plea if he actually committed the crime and was not seeking to protect someone else.  (Dkt. 3-4 at ECF 56–57.)  After the court further explained Antoine's options, he took another break to confer with his counsel.  (Dkt. 3-4 at ECF 58.)  Thereafter, Antoine informed the court, "I would like to say that I did it."  *Id.*

Thus, contrary to Antoine's contention, neither the trial court nor his counsel coerced him into pleading guilty.  Rather, after the court advised Antoine of the potential consequences of going to trial, including the possibility of a higher sentence, and after Antoine conferred multiple times with his attorney, Antoine decided to plead guilty and spontaneously interrupted the proceeding as the court was discussing the conduct of the trial.

The trial judge's actions were not improper.  The court was entitled to explore the possibility of Antoine's pleading guilty, including the potential consequences of going to trial, and doing so was not coercive.  *See People v. Gonzalez*, 5 A.D.3d 168 (1st Dep't 2004); *Desrosiers v. Phillips*, 05-CV-2941(CBA)(JMA), 2006 WL 2092481, at *10 (E.D.N.Y. 2006) ("Under New York law, a trial judge is permitted to participate in plea negotiations with criminal defendants and may even form opinions about petitioner's likely guilt.") (citing *McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004) (citations and quotation marks omitted)); *People v. Crafton*, 159 A.D.2d 271, 271–272 (1st Dep't 1990) (finding no coercion where the trial court "impress[ed] upon defendant the strength of the People's case, the potential sentence to which defendant was exposed under the indictment, and the favorableness of the plea bargain, [and]

reiterated throughout the colloquy that the decision to either plead guilty or go to trial remained with the defendant").  Moreover, Antoine was assisted by able counsel throughout the colloquy and several times conferred privately with his counsel.  Accordingly, Antoine's claim for habeas relief based on the alleged involuntariness of his guilty plea is denied.[14]

IV.     *Ineffective Assistance of Counsel*

a.  *Legal Standard*

Antoine bears the burden of persuasion to demonstrate that his trial counsel's performance was so inadequate as to violate the Sixth Amendment right to assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 688, 696 (1981).  To prevail, Antoine must show both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 687–88.

The first prong requires a showing that counsel's performance was deficient.  Constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).  The Court examines the reasonableness of counsel's actions under all the circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."  *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 389 (2005)).

---

[14] Antoine further argues that his plea was not knowing and voluntary because the court misled him with respect to the legal standard of depraved indifference murder.  (*See* Dkt. 1 at 9.) Having already found that claim procedurally barred from review on the basis of an adequate and independent state ground, the Court nevertheless addresses this contention in the context of Antoine's ineffective assistance of counsel claim, which sets forth the same argument regarding depraved indifference murder.  *See infra* IV.b.

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome" of the proceeding. *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

AEDPA requires federal courts on habeas review to grant state courts substantial "deference and latitude" when considering an ineffective assistance of counsel claim. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Indeed, review of a state court's rejection of an ineffective assistance claim is "doubly deferential" and is subject to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 124 (2009).

To obtain federal habeas relief on a claim of ineffective assistance that previously was denied by a state court either on direct appeal or through collateral attack, Antoine must do more than convince the Court that, in its independent judgment, the state court incorrectly applied the standard for ineffective assistance of counsel set forth in *Strickland*. *Bell v. Cone*, 535 U.S. 685, 699 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 365 (2000)). Rather, Antoine must demonstrate that the state court applied *Strickland* in an objectively unreasonable manner. *Williams*, 529 U.S. at 365; *Sellan v. Kuhlman*, 261 F.3d 303, 314–15 (2d Cir. 2001). For a state

court to apply a federal standard such as *Strickland* in an unreasonable manner, "[s]ome increment of incorrectness beyond error is required" but "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellan*, 261 F.3d at 315 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*." *Strickland*, 466 U.S. at 690 (emphasis added). And "an attorney is not required to forecast changes or advances in the law." *Kuhlman*, 261 F.3d at 315 (quoting *Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994)).

The New York Supreme Court presiding over Antoine's 440 Motion rejected his claim of ineffective assistance of counsel on the merits. (Dkt. 3-3 at ECF 32–42.) The court there found that, consistent with New York law, Antoine's counsel was not ineffective because Antoine received an advantageous plea arrangement and nothing in the record cast doubt on counsel's effectiveness. (Dkt. 3-3 at ECF 32); *see People v. Ford*, 86 N.Y.2d 397, 404 (1995). For the reasons set forth below, the New York Supreme Court did not err nor unreasonably apply *Strickland* in denying Antoine's 440 Motion.

b. *Trial Counsel's Performance*

Antoine alleges that his trial counsel improperly failed to advise him about the possibility of prevailing at trial based on the theory that Antoine's conduct constituted manslaughter and not depraved indifference murder. (Dkt. 1, ECF 26–29.) Antoine cannot meet his burden under *Strickland* with respect to this claim.

With respect to the first prong of the *Strickland* test—the performance of counsel—the professional norms of attorney conduct "provide at least two benchmarks for the representation

of a client who is deciding whether to accept a plea offer." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000). First, the Model Rules of Professional Conduct ("Model Rules") provide that "a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* at 45 (citing Model Rules of Professional Conduct Rule 1.4(b) (1995)).[15] When a plea offer is made to a client, the attorney's "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Id.* (citation and alteration omitted). Thus, defense counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Id.* "[D]efense counsel 'must give the client the benefit of counsel's professional advice on the crucial decision' of whether to plead guilty." *Id.* (quoting *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996)).

Second, the Model Rules also provide that "the ultimate decision whether to plead guilty must be made by the defendant." *Purdy*, 208 F.3d at 45. To strike a proper balance between these two considerations, "[c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 693 (1984) (citations and alterations omitted)).

Here, Antoine fails to establish that his attorney did not satisfy these obligations. Antoine does not establish that his counsel failed to advise him as to the strengths and weaknesses of his

---

[15] The rules governing the professional conduct of attorneys have changed since Antoine's conviction, but at the time of his guilty plea, the rules then in effect were the same as in *Purdy*. However, the change in the rules did not substantively affect the portions relevant here. *Compare* N.Y. Rule of Professional Conduct Rules 1.2, 1.4 (April 1, 2009) *with* N.Y. Lawyer's Code of Professional Responsibility Rule EC 7-7 (Dec. 28, 2007).

case.  The record reflects that Antoine conferred with his counsel multiple times during the plea proceeding and that, at a minimum, the trial court set forth the significant weaknesses of Antoine's case and the significant risk of conviction that Antoine faced by going to trial.  (*See* Dkt. 3-4 at ECF 54, ECF 56, ECF 58.)  Antoine confirmed to the court that he was discussing the case and a possible guilty plea with his attorney, and raised no complaints about his attorney's performance or the advice the attorney was providing at that time.  (Dkt. 3-4 at ECF 60.)  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Although such declarations are not an insurmountable barrier to habeas relief, *see id.* at 74–75, the record evidence here, the trial transcript, and Antoine's statements during his guilty plea, all show that Antoine's claim with respect to his counsel's defective performance regarding his advice to plead guilty is without merit.  Even now, Antoine fails to specify how his counsel's conduct was "coercive" beyond the attorney advising Antoine that he was likely to be convicted at trial and could only receive more time if convicted at trial, and that he should therefore plead guilty—all indicia of reasonable and proper representation given Antoine's situation and the facts of his case.

Furthermore, contrary to Antoine's assertions, his counsel was not ineffective for failing to advise Antoine that his conduct constituted manslaughter rather than depraved indifference murder, and that Antoine should have proceeded to trial with that defense.  Such advice would have been erroneous and would have exposed Antoine to a potentially greater sentence.

1.     *Evolution of New York's Depraved Indifference Murder Law*

Antoine suggests that because of the "sea change in depraved murder jurisprudence" his conduct no longer meets the definition of depraved indifference murder.  (Dkt. 1, ECF 28–29.)  However, even assuming that Antoine's counsel could have predicted the change in the law,

which became clear three years after Antoine's conviction, Antoine would not have benefitted from the change in the law because his conduct still constituted depraved indifference murder under the new definition.

At the time of Antoine's guilty plea, the elements for depraved indifference murder were governed by *People v. Register*, 60 N.Y.2d 270 (1983). *Register* provided that there was no mens rea element for depraved indifference murder beyond recklessness. *Id.* at 278. After Antoine's guilty plea and while his appeal was pending, the Court of Appeals decided *People v. Feingold*, 7 N.Y.3d 288, 294 (2006), which was the culmination of a series of decisions eroding the "objective circumstances" standard of *Register* and moving in the direction of requiring a mens rea element for depraved indifference murder. *See People v. Martinez*, 20 N.Y.3d 971, 975–76 (2012) (Smith. J., concurring) (discussing development of New York's depraved indifference murder jurisprudence). In *Feingold*, the Court of Appeals explicitly reversed *Register*, and established that "depraved indifference to human life is a culpable mental state" that had to be proved as an element of depraved indifference murder. *Feingold,* N.Y.3d at 294. The court explained that "depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not[.]" *Id.* at 296 (internal quotations omitted). The court also reiterated its earlier conclusion, from *People v. Gonzalez*, 1 N.Y.3d 464 (2004), that depraved indifference is a state of mind that is inconsistent with an intent to kill. *Id.* at 293. Hence, after *Feingold*, "depraved indifference murder convictions may no longer be upheld where the evidence of intent to kill is compelling." *Martinez*, 20 N.Y.3d at 976.[16] In 2008, the

---

[16] Several months after its decision in *Feingold*, in November 2006, the Court of Appeals decided *Policano v. Herbert*, 7 N.Y.3d 588 (2006), in which it held, in response to a certified question from the Second Circuit, that the change in the law regarding the mens rea element of

Court of Appeals held that the intervening case law applies to cases pending on direct appeal. *See People v. Jean-Baptiste*, 11 N.Y.3d 539, 542 (2008).[17]

### 2. *Depraved Indifference Murder Applied to Antoine*

The law at the time of Antoine's guilty plea, and the law on which Antoine's counsel advised him, permitted that depraved indifference murder may be established in "fatal one-on-one shootings or knifings," in which "a defendant's actions created an almost certain risk of death." *Martinez*, 20 N.Y.3d at 975 (Smith, J., concurring) (discussing development of New York's depraved indifference murder) (citing *Policano*, 7 N.Y.3d at 599); *see also People v. Sanchez*, 98 N.Y.2d 373, 378 (2002) ("defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish [depraved indifference murder]."

That is the case here, in which Antoine admitted that he did not intend to kill Guerrier, but pointed and fired a gun at him from point-blank range, striking him in the back.[18] (Dkt. 3-4

---

[17] Antoine did not argue on direct appeal that his conviction could not be upheld under the then-developing depraved indifference murder law. (*See* Dkt. 3-2 at ECF 2.) Nevertheless, the Appellate Division, in rejecting his appeal, made clear that any such challenge, had it been made, would have been forfeited by Antoine's guilty plea. *People v. Antoine*, 59 A.D.3d 560 (2d Dep't 2009) (citing *People v. Shearer*, 29 A.D.3d 608 (2d Dep't 2006); *see also People v. Thomas*, 53 N.Y.2d 338, 343 n.2 (1981) ("Forfeiture occurs by operation of law as a consequence of a guilty plea, with respect to issues which as a matter of policy the law does not permit to survive such a plea."). The Appellate Division's reliance on New York's forfeiture rule constitutes an adequate and independent stand ground for the denial of Antoine's appeal on this ground and therefore would bar habeas relief with respect to such a claim, which Antoine in any event does not make. *See supra* at 14–17 (discussing "adequate and independent state ground doctrine"); *see also Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991). Therefore, the only claim Antoine has with respect to depraved indifference murder is in the context of his trial counsel's purported failure to advise him regarding the state of the law of depraved indifference murder.

at ECF 61–62); *see Sanchez*, 98 N.Y.2d at 384 (finding that the defendant shooting victim in chest at close range "would permit a jury rationally to conclude that defendant demonstrated an indifference to human life").  The law at the time of Antoine's guilty plea thus permitted the conviction of a defendant under a theory of depraved indifference murder where a defendant "attacked and killed a single victim with a gun or knife, even where the evidence strongly pointed to intentional murder."  *Martinez*, 20 N.Y.3d at 975 (Smith, J., concurring).  This is especially true where, as here, the defendant admitted that although he did not intend to kill the victim, he nonetheless shot the victim in the back.  Therefore, Antoine's trial counsel was not ineffective in not advising Antoine regarding what would become a significant change in New York's depraved indifference murder law, because such a change had yet to occur.

At best, the legal support to which Antoine directs the Court stands for the principle that a New York jury may not convict a defendant of depraved indifference murder "where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim."  *Policano v. Herbert*, 7 N.Y.3d 588, 600–01 (2006).  *Policano*, decided after Antoine's conviction, does not support the principle that depraved indifference murder *cannot* lie in one-on-one killings evincing the intent to kill,

---

[18] In his habeas petition, Antoine for the first time claims that he told police "he had only intended to scare his stepfather when the gun *accidentally* went off."  (Dkt. 1 at ECF 5) (emphasis added).  Antoine never before has claimed that the gun fired accidentally, and the Court does not credit Antoine's statement.  To the contrary, Antoine's written confession states that "[t]he reason why I shot it [the bullet] out was because of all the anger I had for him over the years from all the abuse[.]"  (Dkt. 3-2 at ECF 30.)  And in his allocution, Antoine stated that, although he did not intend to kill the victim, he pointed the gun at the victim and "pulled the trigger."  (Dkt. 3-3 at ECF 61.)  In any event, the Appellate Division held that Antoine's "contention that the circumstances surrounding his shooting of the victim in this case did not constitute depraved indifference murder was forfeited by his plea of guilty,"  *People v. Antoine*, 59 A.D.3d (2d Dep't 2009) (citing *People v. Shearer*, 29 A.D.3d 608 (2006)), which constitutes an adequate and independent state ground barring federal habeas review with respect to that issue.

although the court did state that such killings "can almost never qualify as depraved indifference murder." *Id.* at 601 (citing *People v. Payne*, 3 N.Y.3d 266, 272 (2004)). But that is not the case here in any event because Antoine stated he did not intend to kill Guerrier but nevertheless shot him in the back from point-blank range.

### 3. *Counsel's Advice Regarding Depraved Indifference Murder*

Although Antoine relies on *People v. Hafeez*, 100 N.Y.2d 253 (2003), to show that the law changed before his guilty plea (Dkt. 1 at ECF 28), this reliance is misplaced. *Hafeez* did not change New York's law of depraved indifference. It merely portended the change that came three years later with *Feingold*. *See Martinez*, 20 N.Y.3d at 976–77 ("our new standard as articulated in *Feingold* should apply to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction") (internal citations omitted). Indeed, in a certified question from the Second Circuit, the New York Court of Appeals instructed that "a series of decisions [including *Hafeez*] incrementally 'pointed the law in a different direction,' culminating in our explicit overruling of *Register* [60 N.Y.2d 270 (1980)] and *Sanchez* [98 N.Y.2d 373 (2002)], in *Feingold*." *Policano v. Herbert*, 7 N.Y.3d 588, 595 (2006) (citing *Feingold*, 7 N.Y.3d at 292). So, Antoine cannot show that his counsel was deficient for failing to predict the future with respect to New York's depraved indifference murder law, notwithstanding the decision in *Hafeez*.

To the extent Antoine suggests his trial counsel's advice was deficient because of the purportedly meritorious defense to depraved indifference murder, that purported defense was not valid at the time of his plea and Antoine's counsel would have been mistaken in advising him regarding it. Antoine's counsel was not deficient in not advising Antoine that he had a meritorious defense to depraved indifference murder on this ground, because no such defense

was available at the time of Antoine's guilty plea.  Although Antoine's counsel did not foresee the dramatic change in New York law, "a trial lawyer is not required to have a crystal ball and predict changes in the law in order to render effective assistance." *Rodriguez v. Brown*, 11-CV-1246(BMC), 2011 WL 4073748, at *4 (E.D.N.Y. Sept. 13, 2011).

For the same reason, Antoine's trial counsel was not ineffective for failing to predict the ruling in *Jean-Baptiste* in 2008 that the new definition of depraved indifference murder should be applied to cases such as Antoine's that were pending on direct appeal in 2008.  Furthermore, Antoine would not have been benefitted from the change in the law, because even under the new definition—requiring a showing of a depraved indifference *mens rea*—Antoine's conviction would have been affirmed.  The evidence that Antoine shot the victim at close range without intending to kill him would have been sufficient to establish that Antoine acted out of an "utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not[.]" *Feingold*, N.Y.3d at 296 (internal quotations omitted).

Viewing "the reasonableness of counsel's challenged conduct on the facts of the particular case . . . *as of the time of counsel's conduct*," *Strickland*, 466 U.S. at 690 (emphasis added), it cannot be said that the performance of Antoine's counsel was deficient when the legal development forming the basis of Antoine's complaint had not yet occurred.

4.      *Counsel's Advice Regarding Manslaughter*

Antoine also asserts that his counsel was ineffective for failing to advise him that he was guilty of the lesser offense of manslaughter and not depraved indifference murder, or pursuing such a defense strategy at trial.  (Dkt. 1 at ECF 28–29.)  This is incorrect.

In New York, a person is guilty of manslaughter in the first degree when, "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person."  N.Y. Penal Law § 125.20[1].  A person is guilty of second-degree manslaughter when "[h]e recklessly causes the death of another person."  N.Y. Penal Law § 125.15[1].  The evidence in this case contradicted a finding that Antoine acted recklessly: (1) Antoine planned the attack on Guerrier by slashing his tires the night before to ensure that Guerrier would be unable to leave his home; (2) the next morning, Antoine, armed with a gun, waited for Guerrier to exit his house; (3) Antoine directly approached Guerrier and shot him at close range; and (4) Antoine's motivation was "anger" for the abuse he had suffered.  Given these facts, it would have been erroneous and improper for Antoine's trial counsel to advise him that he should pursue a trial defense that his conduct constituted manslaughter instead of murder.

In sum, there is no evidence that Antoine's counsel's performance was constitutionally deficient.

c.  *Prejudice Arising from Counsel's Performance*

Under the second *Strickland* prong, Antoine must demonstrate that he was prejudiced by his counsel's purportedly deficient performance with respect to advising him to plead guilty. Antoine must show that, absent his attorney's constitutionally defective advice, he would have proceeded to trial.  *See Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985); *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).  This assessment, in turn, depends in part on a prediction of what the outcome of a trial might have been.  *Hill*, 474 U.S. at 56–58.  The Supreme Court in *Hill* explained that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."  *Id.*  So

too here the critical issue is whether the lesser culpability defense, *i.e.*, that Antoine was guilty of manslaughter and not depraved indifference murder, would have succeeded at trial.

Although Antoine claims that "there is a reasonable possibility" he would have not pleaded guilty and instead insisted on a trial had he been advised properly regarding the law on depraved indifference murder (*see* Dkt. 1 at ECF 39), this claim is insufficient to establish prejudice under *Strickland*. The Court's assessment of whether Antoine would have gone to trial depends in part on whether he can demonstrate success at trial. *Hill*, 474 U.S. at 56–58. Antoine cannot meet this standard because the evidence against him was strong, if not overwhelming, and the defense upon which he would have relied at trial—that he was guilty of the lesser crime of manslaughter—had little chance of success given that Antoine's conduct squarely fit the definition of depraved indifference murder.

Other factors weigh in favor of finding that Antoine would not have decided to go to trial, including "whether pleading guilty gained him a benefit in the form of more lenient sentencing, [and] . . . whether the defendant advanced any basis for doubting the strength of the government's case again him[.]" *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013). As the trial court noted in denying Antoine's 440 Motion, Antoine received a favorable plea agreement, indeed, the statutory minimum for second-degree murder. (Dkt. 3-4 at ECF 67.) Trial counsel's advice to accept a guilty plea did not prejudice Antoine because Antoine received the most lenient sentence he could have received had he been convicted at trial, which, based on the overwhelming evidence of his guilt, was extremely likely. (*See* Dkt. 3-3 at 33) (citing *People v. Bristol*, 273 A.D.2d 248 (2d Dep't 2000)); *see Seifert v. Keane*, 74 F. Supp. 2d 199, 206 (E.D.N.Y. 1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd* 205 F.3d 1324 (2d Cir. 2000). Furthermore,

Antoine does not dispute the strength of the prosecution's evidence establishing that he shot and killed the victim.  (Dkt. 1 at ECF 26) (acknowledging that "it was rather unlikely that identification would be a contested issue at trial").  Rather, Antoine argues that his defense at trial would have been based on a legal argument that Antoine "was guilty only of manslaughter" in the first or second degree, and not depraved indifference murder.  However, as discussed *supra*, this argument would have had little chance of success at trial.  Accordingly, Antoine has failed to meet his burden of affirmatively demonstrating that he was prejudiced by the advice of his trial counsel to plead guilty rather than go to trial, advice which fell well within the "wide range of professionally competent assistance," required under *Strickland*.  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005).

    d.   *Counsel's Failure to Seek a Plea to Manslaughter*

To the extent Antoine suggests that he was prejudiced by his attorney's failure to seek an offer from the trial court or the government allowing him to plead guilty to manslaughter instead of depraved indifference murder, Antoine's argument must fail.  Antoine did not have the right to plead guilty to a lesser included offense without the prosecutor's consent.  *See People v. Machare*, 264 A.D.2d 487 (2d Dep't 1999); *People v. Melo*, 160 A.D.2d 600 (1st Dep't 1990).  The court did not have the power to permit such a plea, and the government did not agree to let Antoine plead to manslaughter or any other lesser offense.  (Dkt. 3-4 at ECF 53) (trial court advising Antoine that "[t]he District Attorney [] tells me he is not going to reduce the charges").  Thus, Antoine cannot demonstrate either that his counsel was ineffective for failing to secure a plea offer to manslaughter or that Antoine was prejudiced by any failure to attempt to secure such a plea offer.

In sum, especially in light of the strong evidence of Antoine's guilt, lack of meritorious defenses, and the advantageous plea offer made by the trial court (the minimum available under New York law), far from performing in a constitutionally deficient manner, counsel provided Antoine meaningful representation by advising him to accept the trial court's advantageous plea offer. *See People v. Hunter*, 23 A.D.3d 767 (3d Dep't 2005) (due to the "likelihood that the People would have been able to secure a conviction . . . [d]efense counsel's conduct in encouraging defendant to accept the plea bargain here was nothing more than the product of reasonable and legitimate strategy in the best interest of defendant"). The New York Supreme Court's ruling on the merits with respect to Antoine's ineffective assistance claim was not in error, let alone an unreasonable application of clearly established federal law. Antoine's claim regarding the ineffectiveness of his counsel is denied.

V.      *Procedural Errors by the N.Y.C.P.L. § 440.10 Court*

Finally, Antoine claims that the lower court improperly denied his 440 Motion to vacate the judgment of conviction without conducting a hearing. Federal habeas relief is not available to redress such alleged procedural errors in state post-conviction proceedings. *Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011); *see* 28 U.S.C. § 2254(a).

Moreover, Antoine's challenge is to a decision in a New York's post-conviction proceeding and "not the judgment which provides the basis for his incarceration," so therefore the allegation "states no cognizable federal habeas claim." *Jones v. Duncan*, 162 F. Supp. 2d 204, 218 n.21 (2001) (citing *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998)).[19] Because

---

[19] The district court in *Jones v. Duncan* recognized that, although the Second Circuit had not at that time directly ruled that a procedural error in a post-conviction review proceeding such as N.Y.C.P.L. § 440.10 was not cognizable on federal habeas review, the district court followed the majority of circuits to so rule. *See Jones*, 162 F. Supp. 2d at 218. Since *Jones*, however, the Second Circuit has ruled that "a due process challenge to New York's collateral post-conviction

no habeas relief lies for the purported error in a state post-conviction proceeding for which Antoine seeks relief, the petition is denied as to that claim.

## CONCLUSION

For the reasons set forth above, Antoine's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.  Because Antoine has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," the Court declines to issue a Certificate of Appealability.  *Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to terminate the petition and to close this case.

SO ORDERED:

 /s/ Pamela K. Chen          
PAMELA K. CHEN
United States District Judge

Dated: August 29, 2013
Brooklyn, New York

---

proceedings[] does not state a claim that is cognizable under federal habeas review."  *Word v. Lord*, 648 F.3d at 131.